EDWARD GARCIA, Bar No. 173487
BRAGG & KULUVA
Embarcadero Center West
275 Battery Street, Suite 1100
San Francisco, CA 94111
(415) 273-6500
(415) 273-6535
edgarcia@braggkuluva.com

Attorneys for Defendant
Merced Faculty Associates Medical Group, Inc.

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INES MOTA; AN INDIVIDUAL,<br><br>Plaintiff,<br><br>vs.<br><br>MERCED FACULTY ASSOCIATES MEDICAL GROUP, INCORPORATED; A CORPORATION; AND DOES 1-100, INCLUSIVE,<br><br>Defendants. | CASE NO.:<br><br>[Merced County Superior Court No: CVM019040]<br><br>**DECLARATION OF EDWARD GARCIA IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL** |

I, EDWARD GARCIA, declare:

1. I am an attorney at law duly licensed to practice law before all courts of the State of California and am associated with the law offices of BRAGG & KULUVA, attorneys of record for, Defendant Merced Faculty Associates Medical Group, Inc. in the above-entitled action. I have personal knowledge of the facts set forth herein and if called upon to testify, hereto, I could and would testify competently and truthfully thereto.

2. Attached hereto as **Exhibit A** is a true and correct of the Complaint in the action, *Mota v. Merced Faculty Associates Medical Group, Inc., and Does 1-100*, in the Superior Court of the State of California, County of Merced, CVM019040.

3. Attached hereto as **Exhibit B** is a true and correct copy of Merced Faculty Associates Medical Group, Inc.'s Answer, filed on September 14, 2014.

4. Other than the attached **Exhibits A and B** there are no other pleadings that have been filed in this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this fifth day of September, 2014 at San Francisco, California.

EDWARD GARCIA

**PROOF OF SERVICE BY MAIL**

(FRCivP 5(b)) or
(CCP 1013a, 2015.5) or
(FRAP 25(d))

I am employed with the law firm of Bragg & Kuluva, whose address is 275 Battery Street, Suite 1100, San Francisco, CA 94111; I am not a party to the within cause; I am over the age of eighteen years and I am readily familiar with Bragg & Kuluva's practice for collection and processing of correspondence for mailing with the United States Postal Service and know that in the ordinary course of Bragg Kuluva's business practice the document described below will be deposited with the United States Postal Service on the same date that it is placed at Bragg & Kuluva with postage thereon fully prepaid for collection and mailing.

I further declare that on the date hereof I served a copy of:

NOTICE OF REMOVAL OF ACTION; DECLARATION OF EDWARD GARCIA FILED CONCURRENTLY HEREWITH [28 USC §§1331, 1441 AND 1446]; DEMAND FOR JURY TRIAL; CERTIFICATE OF NOTICE OF INTERESTED PARTIES

on the following by placing a true copy thereof enclosed in a sealed envelope addressed as follows for collection and mailing at Bragg & Kuluva, 275 Battery Street, Suite 1100, San Francisco, CA 94111, in accordance with Bragg & Kuluva's ordinary business practices:

Robert J. Wasserman
Mayall Hurley P.C.
2453 Grand Canal Boulevard
Stockton, CA 95207

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed this day, September 5, 2014, at San Francisco, California.

Annette Biltz

# EXHIBIT “A”

AUG 26 2014

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)

MERCED COUNTY
14 AUG 12 PM 2:52
CLERK OF THE SUPERIOR COURT
BY TAWN SAEPHANH DEPUTY

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

MERCED FACULTY ASSOCIATES MEDICAL GROUP, INCORPORATED; a corporation; and DOES 1-100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

INES MOTA, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Merced County Superior Court
627 West 21st Street
Merced, CA 95340

CASE NUMBER: *(Número del Caso):* CVM019040

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Robert J. Wasserman; Mayall Hurley, P.C.; 2453 Grand Canal Boulevard, Stockton, CA 95207

DATE: AUG 1 2 2014 *(Fecha)* LINDA ROMERO SOLES Clerk, by *(Secretario)* TAWN SAEPHANH, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☑ on behalf of *(specify)*: MERCED FACULTY ASSOCIATES MEDICAL GROUP, INCORPORATED, A CORPORATION

under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Robert J. Wasserman (Bar # 258538)
Solwa K. Haddad (Bar # 294625)
MAYALL HURLEY, P.C.
2453 Grand Canal Boulevard, Stockton, CA 95207
TELEPHONE NO.: (209) 477-3833 FAX NO.: (209) 473-4818
ATTORNEY FOR (Name): Plaintiff Ines Mota

FOR COURT USE ONLY

FILED
MERCED COUNTY
14 AUG 12 PM 2:52
CLERK OF THE SUPERIOR COURT
BY TAWN SAEPHANH
DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MERCED
STREET ADDRESS: 627 W 21st Street
MAILING ADDRESS:
CITY AND ZIP CODE: Merced 95340
BRANCH NAME: Civil - Unlimited

CASE NAME:
MOTA v. MERCED FACULTY ASSOCIATES MEDICAL GROUP

## CIVIL CASE COVER SHEET

- [✓] Unlimited (Amount demanded exceeds $25,000)
- [ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
- [ ] Counter
- [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: CVM019040

JUDGE:

DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [✓] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (*not specified above*) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. [ ] Large number of separately represented parties
   - b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. [ ] Substantial amount of documentary evidence
   - d. [ ] Large number of witnesses
   - e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [✓] punitive
4. Number of causes of action (*specify*): Six (6)
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: August 11, 2014
Robert J. Wasserman
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability (*not asbestos or toxic/environmental*) (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice (*not medical or legal*)
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract (*not unlawful detainer or wrongful eviction*)
  - Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage (*not provisionally complex*) (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment (*non-domestic relations*)
  - Sister State Judgment
  - Administrative Agency Award (*not unpaid taxes*)
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint (*not specified above*) (42)
  - Declaratory Relief Only
  - Injunctive Relief Only (*non-harassment*)
  - Mechanics Lien
  - Other Commercial Complaint Case (*non-tort/non-complex*)
  - Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition (*not specified above*) (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

MAYALL HURLEY
A Professional Corporation
2453 Grand Canal Boulevard
Stockton, California 95207
Telephone (209) 477-3833
Facsimile (209) 473-4818
ROBERT J. WASSERMAN (SBN: 258538)
SALWA K. HADDAD (SBN: 294625)

Attorneys for Plaintiff, Ines Mota

FILED
MERCED COUNTY
14 AUG 12 PM 2:53
CLERK OF THE SUPERIOR COURT
BY TAWN SAEPHANH
DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MERCED

INES MOTA; an individual,

Plaintiff,

vs.

MERCED FACULTY ASSOCIATES MEDICAL GROUP, INCORPORATED; a corporation; and DOES 1-100, inclusive,

Defendants.

Case No.: CVM019040

COMPLAINT FOR DAMAGES FOR

1. DISABILITY DISCRIMINATION
2. FAILURE TO ACCOMMODATE
3. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS
4. RETALIATION FOR TAKING PROTECTED MEDICAL LEAVE – CFRA
5. FAILURE TO PREVENT DISCRIMINATION AND RETALIATION
6. RETALIATION FOR TAKING PROTECTED MEDICAL LEAVE – FMLA

JURY TRIAL DEMANDED

Plaintiff, Ines Mota ("Mota") brings this action against Defendant, Merced Faculty Associates Medical Group, Incorporated ("MFA") and Does 1-100, inclusive, for general, compensatory, punitive, and statutory damages, injunctive relief, costs, and attorneys' fees resulting from the defendants' unlawful and tortious conduct, and as ground therefore alleges:

///

///

///

## PARTIES

1. Mota is an individual and is, and at all times relevant herein was, a resident of Merced County, California. At all times relevant herein, Mota was employed by MFA in Merced County, and was an "employee" as defined by Government Code section 12926(c).

2. MFA is a California corporation qualified to do business in the State of California. MFA is an "employer" as defined by Government Code sections 12926(d) and 12940(j)(4)(A).

3. MFA and Does 1-100 are collectively referred to as "Defendants."

4. Mota is not aware of the true names and capacities of the defendants sued herein as Does 1-100, whether individual, corporate, associate, or otherwise, and, therefore, sues such defendants by these fictitious names. Mota will amend this complaint to allege their true names and capacities when ascertained. Mota is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Mota's injuries and damages herein alleged were illegally caused by such defendants. Unless otherwise indicated, each defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-defendant.

5. Mota is informed and believes and thereupon alleges that at all times mentioned herein, each defendant, including each Doe defendant, was acting as the agent, servant, employee, partner and/or joint venturer of and was acting in concert with each of the other defendants, including each Doe defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action. Each defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining defendants.

## VENUE AND JURY TRIAL DEMAND

6. Venue is proper in this Court because the discriminatory acts alleged herein took place in Merced County, and Mota's former place of employment with MFA is located within Merced County. Mota hereby demands a jury trial.

///

## GENERAL ALLEGATIONS

7. On March 1, 2012, Merced Faculty Associates Medical Group, Inc. ("MFA") hired Ines Mota ("Mota") for a Medical Assistant, Level One position in the Wound Care division of MFA's office located on 374 Olive Avenue, Merced, California 95348 ("Olive location").

8. During her employment with MFA, Mota's supervisors included: (1) Office Manager Alyssa Duran ("Duran"), who conducted Mota's first performance evaluation, (2) Nurse Practitioner Nikelle Severe ("Severe"), (3) Office Manager Julie Woody ("Woody"), who replaced Duran and conducted Mota's second performance evaluation, (4) Nurse Practitioner Lamin Tunkara ("Tunkara"), who replaced Severe, and (5) Office Manager Patricia Maravilla ("Maravilla"), who replaced Woody. Mota's supervisors also included: (6) Dr. Qadeer, (7) Dr. Chughtai, (8) Human Resources Representative Kayla Grantham ("Grantham"), and (9) Chief Operating Officer Susan Harris ("Harris"), who maintained an off-site office.

9. There were approximately eight employees in the wound care department at any one time. During the incidents described, there were three medical assistants, Mota, Brenda (last name unknown), and Linda (last name unknown), who were answerable to Tunkara with respect to patient care. There was Maravilla who the medical assistants saw for performance issues and paid time off ("PTO") requests. Then, there was the Chief Operating Officer ("COO"), Harris, and the doctors, Qadeer and Chughtai, who rarely appeared on-site.

10. Mota excelled at her job. On June 4, 2012, Mota was granted her first merit-based pay increase. On July 12, 2012, Mota's first employment evaluation by Duran indicated that she was meeting expectations in all performance categories. On October 23, 2012, Woody promoted Mota to Medical Assistant, Level Two. On January 17, 2013, Woody gave Mota a performance evaluation indicating Mota either met or exceeded expectations in all performance categories. On January 28, 2013, Mota received her second merit-based pay increase. Mota, the longest employed medical assistant in the office, also trained Brenda, Linda, and Tunkara.

11. In late September 2013, the then office manager, Maravilla, instructed employees that they were not allowed to check their phones during work. Mota informed Maravilla that she

would need to check her phone from time-to-time because her aunt was very sick and did not have long to live.

12. On or about the same time, Mota submitted a PTO request for Wednesday, October 2, 2013 and Thursday, October 3, to Maravilla so that she could visit her ailing aunt in Los Angeles. Maravilla approved the PTO leave for those days. While visiting her aunt on October 2, Mota's aunt passed away. The burial was scheduled for Saturday, October 5.

13. On October 3, 2013, before her approved PTO leave expired, Mota called Maravilla and requested October 4 off so that she could stay in Los Angeles and attend her aunt's funeral services on Saturday, October 5. Maravilla denied Mota's request, stating, "You don't have enough PTO." Mota asked if she could have unpaid leave, but Maravilla said, "No. If you don't come on Friday, you're going to get a write-up." Mota asked if both her four hours of PTO will be used in addition to getting written-up and Maravilla said, "Yes." Mota was concerned and informed Maravilla that she never had work issues and asked whether she would get fired. Maravilla said, "You don't have anything on your personnel record so it's just going to be a verbal. You're going to be fine." Maravilla said, "Call me tomorrow so we can confirm exactly how many hours of PTO you have left, but it shouldn't be a problem because you'll end up getting a verbal warning."

14. The next day on Friday, October 4, 2014, Mota called Maravilla and confirmed that she would be unable to come to work that day. Maravilla then stated, "You only have four hours of PTO left" and warned Mota that if she did not come to work she would get written-up. Mota then asked again if she was going to get fired. Maravilla stated, "No, you don't have anything on your record, so it will just be a verbal warning." Mota also asked again if she could have unpaid leave instead. Maravilla said, "No, you have to get a verbal warning."

15. On Monday, October 7, 2013, when Mota returned to work, Maravilla gave Mota her first write-up for taking eight hours of leave to attend her aunt's funeral with only four hours of available PTO.

16. Subsequently, on Wednesday, October 9, 2013, the COO, Harris called Mota into a meeting with Maravilla to discuss team building and the "overall feel of the office." This was the

first time Mota had ever heard of complaints regarding "team building." During the meeting, Harris asked Mota how she was enjoying her job. Mota informed Harris that "she loves what she is doing and enjoys working in wound care" and that she felt everything was fine.

17. Mota continued to do her job. However, in late October, Mota began experiencing severe stomach pains. As a result, Mota scheduled several doctor's appointments. On one of these occasions, Mota was tested for and diagnosed with H-pylori. However, Mota continued to go to work while suffering from severe stomach pain because of Maravilla's earlier warnings that time off without available PTO time would result in write-ups.

18. On November 14, 2013, Harris met with Mota and Maravilla again to discuss the issue of team building. During this meeting, Harris reprimanded Mota for not joining her co-workers during potlucks and other events during her lunch break. Mota expressed her concern that about being required to attend events during her lunch hour. Nonetheless, Harris continued to scold Mota, stating, "You don't care because you don't want to care."

19. Mota disagreed, but also conceded that she may be keeping to herself more because she has not been feeling well. Mota complained to Harris that she has had to come to work while ill because Maravilla threatened to write her up if she took anymore time off without PTO. Harris instructed Mota file FMLA paperwork if she was not feeling well. Mota said she was not familiar with FMLA, so Harris further instructed Mota to contact Grantham for assistance.

20. Harris and Mota concluded their conversation by agreeing that Mota should move from her current position in Wound Care at MFA's Olive location to another MFA location for a "fresh start." Mota agreed to move locations and told Harris that she was "excited about making the change." Harris confirmed that MFA would be able to accommodate a transfer. Harris further noted that the "meeting ended on a very positive note; Ines gave me a hug and said thank you and she is very excited to start fresh at a new office and to expanding her MA skills."

21. Mota continued to suffer from stomach pains. On November 19, 2013, Mota met with her doctor, Igaya Santos, who gave her a doctor's note requiring medical leave from November 19, 2013 with an expected return to work date of December 2. Mota submitted her doctor's note and her FMLA paperwork. MFA approved Mota's medical leave request. On or

about the same day, Mota asked Maravilla how to obtain paid disability leave. Maravilla told Mota that the FMLA paperwork would get her paid disability leave.

22. In late November 2013, Mota spoke with Grantham about her team building conversations with Harris and requested to see her personnel file. Grantham provided Mota only a partial copy of her personnel file. Mota asked Grantham if she was going to receive paid disability leave; Grantham replied in the affirmative. Mota subsequently called Maravilla two more times to ask about the disability leave. Maravilla said, "You should be getting something soon." Mota's co-worker, Brenda, eventually informed Mota that she had to file separate paperwork.

23. On November 26, 2013, Mota submitted a doctor's note extending her medical leave to December 15. On December 4, Mota submitted a doctor's note extending her medical leave until January 13, 2014. On January 3, Mota submitted a doctor's note extending her medical leave to February 3. In submitting each note to MFA, Mota would either drop off a physical copy with Grantham and Maravilla or fax a copy.

24. On January 12, 2014, Mota filed her disability insurance paperwork.

25. On January 22, 2014, Mota saw GI specialist, Dr. Munnagi, who scheduled Mota for a GI procedure and endoscopy to find an appropriate treatment for her stomach pain.

26. On January 30, 2014, Mota submitted a doctor's note extending her medical leave until March 10. Mota gave a physical copy of her doctor's note to Harris and informed Harris that she was "awaiting GI procedures and an endoscopy" and that "the doctor did not have anything sooner than February 25" and that she needed to wait for her results in March. Harris replied, "Okay, I hope you get better."

27. However, on February 5, 2014, Grantham sent a letter to Mota stating MFA would not provide a medical leave accommodation further than the twelve weeks granted to her under FMLA. The letter further noted that Mota's twelve weeks of medical leave under FMLA expires on February 19. The letter concluded that MFA would not provide Mota with any additional medical leave until November 20, 2014, at which time she can reapply under FMLA.

///

///

28. On February 11, 2014, Grantham sent a second letter to Mota threatening that if Mota does not return to work on February 20, she will lose her job protection and further noting that her employer will consider terminating her employment at that time.

29. On February 13, 2014, Grantham spoke with Mota over the telephone to discuss the February 5 and February 11 letters as well as Mota's doctor's note extending her medical leave until March 10. Mota specifically informed Grantham that she would be unable to return until March 10 because she was still suffering from stomach pains and that she was awaiting her GI procedure, endoscopy, and results. Grantham then told Mota that MFA could not guarantee that Mota could come back to wound care if she did not return before her FMLA time ran out.

30. Mota said, "I understand, but I don't have a problem with that because [Harris] already told me I was going to be transferred. Do you know where I'm going to be transferred?" Grantham responded that she did not know, but told Mota not to worry because they would let her know. Mota said, "Okay, I understand that you can't cover me at wound care, but I'm looking forward to a transfer. We will just go from there." Grantham replied only by asking Mota to keep her posted. Mota agreed to continue to provide Grantham with her doctor's notes until she was able to return.

31. On February 20, 2014, in keeping with her doctor's instructions and prior conversation with Grantham, Mota did not report to work. However, that same day, Grantham delivered a letter to Mota informing her that her employment with MFA had been terminated "as of 2/20/2014 in accordance with the FMLA and company policy" for failing to return to work.

32. On February 25, 2013, Dr. Munnagi carried out the scheduled procedures.

33. On March 12, 2013, Mota received the results from her GI procedure and endoscopy. Mota was diagnosed with chronic gastritis and irritable bowel syndrome. Her doctor prescribed her various medications to treat her condition. Subsequently, Mota's doctor released Mota to work without restrictions.

34. On June 27, 2014, Mota filed a complaint against MFA with the Department of Fair Employment and Housing ("DFEH") and was issued a right-to-sue notice that same day. On

August 11, 2014, Mota sent MFA a copy of her DFEH complaint and right-to-sue notice via certified mail with return receipt requested.

35. The list of misconduct by Defendants set forth above is a partial list only, and by way of example.

36. As a direct and proximate result of Defendants' conduct, Mota has been harmed and requests relief as hereafter provided.

**FIRST CAUSE OF ACTION**
**VIOLATION OF GOVERNMENT CODE § 12940(a)**
**(Disability Discrimination)**
**Against MFA and Does 1-100**

37. Mota hereby realleges and incorporates by reference Paragraphs 1 through 36 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

38. The Fair Employment and Housing Act ("FEHA") explicitly prohibits an employer from refusing to hire or employ a person, discharging a person from employment, or discriminating against such person in compensation or in terms, conditions or privileges of employment on the basis of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age or sexual orientation. Gov. Code § 12940(a).

39. At all times herein mentioned, Mota was qualified for her position at MFA based upon her work experience and performance history with MFA.

40. MFA was at all times material herein Mota's employer pursuant to Government Code section 12926(d) and was therefore barred from discriminating against its employees based on disability and/or perceived disability.

41. Nevertheless, as set forth above, Defendants discriminated against Mota based on disability, perceived disability, and/or future perceived disability, in violation of Gov. Code § 12940(a).

///

///

42. The acts taken toward Mota were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Mota, thereby justifying an award to her of punitive damages.

43. Wherefore Mota has been harmed and requests relief as hereafter provided.

**SECOND CAUSE OF ACTION**
**VIOLATION OF GOVERNMENT CODE § 12940(m)**
**(Failure to Accommodate)**
**Against MFA and DOES 1-100**

44. Mota hereby realleges and incorporates by reference Paragraphs 1 through 43 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

45. The FEHA requires an employer to "make reasonable accommodation for the known physical or mental disability of an applicant or employee." Gov. Code § 12940(m).

46. MFA at all times material herein was Mota's employer pursuant to Government Code section 12926(d) and knew of his disability and was required to reasonably accommodate her pursuant to Government Code section 12940(m).

47. Nevertheless, as set forth above, Defendants failed to reasonably accommodate Mota.

48. The acts taken toward Mota were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Mota, thereby justifying an award to her of punitive damages.

49. Wherefore Mota has been harmed and requests relief as hereafter provided.

///

///

///

///

///

**THIRD CAUSE OF ACTION**
**VIOLATION OF GOVERNMENT CODE § 12940(m)**
**(Failure to Engage in the Interactive Process)**
**Against MFA and Does 1-100**

50. Mota hereby realleges and incorporates by reference Paragraphs 1 through 49 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

51. The FEHA requires an employer "to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical disability or known medical condition." Gov. Code § 12940(n).

52. MFA at all times material hereto was Mota's employer pursuant to Government Code sections 12926(d) and 12940(j)(4), had knowledge of her disability and was required to engage in the interactive process pursuant to Government Code section 12940(n).

53. Nevertheless, as set forth above, Defendants failed to engage in a timely, good faith interactive process with Mota.

54. The acts taken toward Mota were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Mota, thereby justifying an award to her of punitive damages.

55. Wherefore Mota has been harmed and requests relief as hereafter provided.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF GOVERNMENT CODE SECTION 12945.2(l)**
**(Retaliation for Taking Protected Leave - CFRA)**
**Against MFA and Does 1 – 100**

56. Mota hereby realleges and incorporates by reference Paragraphs 1 through 55 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

///

///

57. The California Family Rights Act ("CFRA") prohibits an employer from refusing to hire, discharge, fine, suspend, expel, or otherwise discriminate against any individual because that person has exercised their right to family care and medical leave. Gov. Code § 12945.2(l).

58. Nonetheless, as set forth above, Defendants discriminated against and discharged Mota in violation of Government Code section 12945.2(l).

59. The acts taken toward Mota were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Mota, thereby justifying an award to her of punitive damages.

60. Wherefore Mota has been harmed and requests relief as hereafter provided.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF GOVERNMENT CODE SECTION 12940(k)**
**(Failure to Prevent Discrimination and retaliation)**
**Against MFA and Docs 1 – 100**

61. Mota hereby realleges and incorporates by reference Paragraphs 1 through 60 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

62. The FEHA requires an employer to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring. Gov. Code § 12940(k).

63. MFA was at all times material herein Mota's employer pursuant to Government Code section 12926(d) and was therefore required to prevent discrimination, harassment and retaliation as set forth in Government Code section 12940(k).

64. MFA knew or should have known of the discrimination and retaliation by its employees, supervisors, managers and Does 1-100, inclusive.

65. Nevertheless, as set forth above, Defendants did nothing to rectify or prevent said discrimination and retaliation. Instead, Defendants consented to, encouraged, permitted and/or acquiesced to the discrimination and retaliation.

///

///

66. The acts taken toward Mota were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Mota, thereby justifying an award to her of punitive damages.

67. Wherefore Mota has been harmed and requests relief as hereafter provided.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF 29 USC § 2615(a)(2)**
**(Retaliation for Taking Protected Medical Leave – FMLA)**
**Against MFA and Does 1-100**

68. Mota hereby realleges and incorporates by reference Paragraphs 1 through 67 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

69. Family and Medical Leave Act ("FMLA") provides that it is unlawful for an employer to discriminate against or discharge an employee for taking FMLA leave, or for opposing or complaining about violations of FMLA. 29 USC § 2615(a)(2).

70. MFA was at all times relevant herein Mota's employer pursuant to 29 USC § 2611, knew of her serious medical condition, and was thereby barred from retaliating against her in violation of the FMLA.

71. Nevertheless, as set forth above, Defendants discriminated and discharged against Mota because she took leave pursuant to the FMLA.

72. The acts taken toward Mota were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Mota, thereby justifying an award to her of punitive damages.

73. Wherefore Mota has been harmed and requests relief as hereafter provided.

///

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, Mota prays judgment against Defendants as follows:

**As to the First through Fifth Causes of Action:**

1. Economic (special) and non-economic (general) damages in an amount yet unknown, but in excess of the minimum jurisdictional limit of this Court;
2. For punitive and/or exemplary damages;
3. For injunctive relief prohibiting Defendants from engaging in the unlawful practices complained of herein and for an order requiring Defendants to conduct training for all employees, supervisors, and management on the requirements of the FEHA, the rights and remedies of those who allege a violation of the FEHA, and Defendants' internal grievance procedures pursuant to Government Code section 12965(c);
4. For statutory attorneys' fees and costs, including those available under Government Code section 12965(b) and Code of Civil Procedure section 1021.5;
5. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including that available under Civil Code sections 3287(a) and 3289(b); and
6. For such other and further relief as the court deems just and proper.

**As to the Sixth Cause of Action:**

1. For compensatory, special, and general damages, including lost wages and related benefits, and medical expenses in an amount according to proof, but in excess of the minimum jurisdictional limit of this Court;
2. For punitive and/or exemplary damages;
3. For liquidated damages, including those available under 29 USC § 2617(a)(1)(a)(iii);
4. For injunctive relief, including that available under 29 USC § 2617,
5. For statutory attorneys' fees and costs, including those available under 29 USC § 2617(a)(3);

6. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, including that available 29 USC § 2617(a)(1)(A)(i), according to proof; and

7. For such other and further relief as the court deems proper.

DATED: August 11, 2014

MAYALL HURLEY P.C.

By_______________________

ROBERT J. WASSERMAN
SALWA K. HADDAD
Attorneys for Plaintiff,
INES MOTA

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF MERCED<br><br>627 W 21st St<br>Merced, California 95340<br>(209) 725-4111 | *Reserved for Clerk's File Stamp*<br><br>FILED<br>MERCED COUNTY<br>14 AUG 12 PM 4:56<br>CLERK OF THE SUPERIOR COURT<br>BY TAWN SAEPHANH<br>DEPUTY |
|---|---|
| Ines Mota,<br>Plaintiff<br><br>vs.<br><br>Merced Faculty Associates Medical Group Inc.,<br>Defendant | |
| NOTICE OF CASE MANAGEMENT CONFERENCE<br>NOTICE OF INCLUSION IN DELAY REDUCTION PROGRAM | Case No. CVM019040 |

To all Parties and their Attorneys of Record:

Please take notice that the above-entitled action has been included in this Court's Delay Reduction Program. Local Rule 4 will hereafter apply to this action. Our Local Rules may be reviewed on-line at www.merced.courts.ca.gov. You are required to comply with the guidelines for program cases as set forth in the above referenced Local Rule and the applicable California Rules of Court (CRC), including Rules 3.720-3.735.

You are further advised that a Case Management Conference (CMC) in the above action has been scheduled, per Rule 4(b)(1)(a), for:

**January 12, 2015 at 10:00 am in Courtroom 8**

**Plaintiff must serve this Notice on all Parties to this action at the same time the Complaint is served. Failure to do so may cause unnecessary delay to this action.**

Parties desiring to appear telephonically at the CMC shall comply with CRC, Rule 3.670 and Local Rule 4, and are responsible for making timely arrangements with CourtCall, LLC. CourtCall, LLC may be reached at (888) 882-6878. Notices of Telephonic Appearance may be placed on the CMC Statement or may be filed independently with the Court NOT LESS THAN THREE (3) COURT DAYS prior to the CMC. A Notice of Telephonic Appearance is deemed valid on any subsequent, continued CMCs.

**PURSUANT TO CRC, RULE 3.724, THE PARTIES MUST MEET AND CONFER NO LATER THAN 30 DAYS PRIOR TO THE CMC.**

A CMC Statement shall be filed with the Court no later than 15 days prior to the date set for the CMC. Parties shall use Judicial Council form CM-110 (CRC 3.725). This form is available at the Court Clerks Office or on-line at www.courtinfo.ca.gov.

If you have any further questions regarding this Notice, please contact the undersigned at the number indicated above.

Robert Wasserman
2453 Grand Canal Blvd.
Stockton, CA 95207

Date: August 12, 2014

Linda Romero Soles, Court Executive Officer

Tawn Saephanh
Printed Name

By: TAWN SAEPHANH
Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF MERCED

## Alternative Dispute Resolution (ADR) Information Guide

Adapted by permission from the
Administrative Office of the Courts' publication:
**"Alternative Dispute Resolution, *Options for Resolving Your Dispute*"**

# ADR INFORMATION GUIDE

## There are Alternatives to Going to Trial

Did you know that most of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach agreement. Because of these potential advantages, it is worth considering using ADR early in a lawsuit, **or even before you file a lawsuit.**

## Potential Advantages of ADR

Here are some potential advantages of using ADR:

- **Saves Time and Money:** A dispute often can be settled or resolved much sooner with ADR, allowing parties to save money on attorney fees, court costs, and experts' fees. An ADR fee of $300 to be shared by the Parties is charged by the Court for its Judicial Arbitration and Early Mediation Programs – this fee is not waived in cases involving successful Fee Waiver Applications.
- **Increases Control Over the Process and the Outcome:** In ADR, parties typically play a greater role in shaping both the process and its outcome. In ADR, parties have the opportunity to tell their side of the story just as they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that may not be available in a trial. Other ADR processes, such as arbitration, allow the parties to choose a qualified person or expert in a particular field to decide the dispute.
- **Preserves Ongoing Relationships:** ADR can be a less adversarial way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve. For example, in cases involving business partners, family members or customer-vendor relationships.
- **Increases Satisfaction:** In a trial, there is typically a winner and a loser. ADR can help the parties find win-win solutions and achieve their respective goals. This, along with other potential advantages of ADR, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.
- **Fosters Attorney-Client Relationships:** Parties and Attorneys may also benefit from ADR by exploring their roles as problem-solvers and counselors rather than merely acting as adversaries. Quick, cost-effective, and satisfying resolutions are likely to produce happier parties and stronger relationships with their attorneys.

## What are the ADR Options?

The most commonly used ADR processes are Mediation, Arbitration, Neutral Case Evaluation, and Settlement Conferences.

### ♦ Private Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but remains helps the parties communicate so they can settle the dispute themselves. Mediation leaves control of the outcome with the parties.

Cases for Which Mediation May Be Appropriate: Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can listen to the parties and help them communicate in an effective and non-confrontational manner.

### ♦ Private Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed.

Arbitration may be either "binding" or "non-binding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision. Arbitrations may be structured to set maximum and minimum awards, known as "High-Low Arbitrations". This allows the plaintiff to have a guaranteed minimum recovery and the defendant to rely on a guaranteed absolute maximum exposure, regardless of how the arbitration unfolds.

Cases for Which Arbitration May Be Appropriate: Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

### ♦ Neutral Case Evaluation

In Neutral Case Evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. Although the evaluator's opinion is not binding, the

parties typically use it as a basis for trying to negotiate a resolution of the dispute. Even if not successful in resolving the case, Neutral Case Evaluation can lead to use of other ADR procedures, such as arbitration or mediation, especially when undertaken early in the litigation.

Cases for Which Neutral Case Evaluation May Be Appropriate:
Neutral Case Evaluation is appropriate for most cases, and may be most useful in cases that involve technical issues that require special expertise to resolve or in cases that the only significant issue is the amount of damages.

♦ **Settlement Conferences**
In Settlement Conferences, the parties and their attorneys meet with the judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement Conferences are appropriate in any case where settlement is an option. Mandatory Settlement Conferences, ordered by the Court, are often held near the date a case is set for trial.

## ADR Programs Offered by Merced Superior Court

Merced Superior Court provides two forms of ADR programs through its Early Mediation Program (EMP) and its Judicial Arbitration Program, described below.

♦ **Merced Superior Court's *Early Mediation Program* (EMP)**
**Civil unlimited cases are generally assigned to the Early Mediation Program.** Merced Superior Court provides parties with an opportunity to mediate cases before extensive fees and costs are spent (see "Private Mediation" below, for a description of how Mediation works). The EMP allows parties the opportunity to obtain the services of a mediator for only a $300 fee, to be shared by the parties. Because the parties have not generally committed extensive resources and time to a case at this early stage, resolution can be achieved at a lower cost and possibly with more satisfying results. Early Mediation Program Forms are available at: www.merced.courts.ca.gov. Here's how the EMP works:

- Civil Unlimited Cases are generally assigned to the Early Mediation Program, unless an opt-out form is filed by any party within 120 days from the filing of the Complaint. **Timely service of the Complaint (within 60 days of filing) is essential to comply with the Early Mediation Program requirements.**

- The $300 EMP fee must be paid to the Civil Clerk's Office within 120 days of filing the lawsuit, and the Parties are to schedule Early Mediation before the first CMC (set approximately 150 days from the filing of the Complaint).

Plaintiff is to collect the EMP fee, to be shared equally by the Parties or as the Parties agree, and timely submit the entire amount to the Civil Clerk's Office.

- Parties then select a Mediator from Merced Superior Court's ADR Neutral List available on the Court's website. Parties must notify the ADR Office immediately if a mediator cannot be agreed upon. The ADR Office will then provide the parties with a mediator short list where each party may de-select a mediator and report back to the ADR Coordinator within 5 days.

- In preparation for the Early Mediation, Parties are to draft a Mediation Statement of no more than 5 pages outlining the Party's position including agreed to and disputed facts. The Mediation Statement is to be sent to the mediator one (1) week before the Early Mediation (do not file with the Court).

- After the Early Mediation, Parties are to fill out a confidential Mediation Survey and send it to the ADR Office of the Court.

♦ **Merced Superior Court's *Judicial Arbitration Program***

Merced Superior Court provides parties with an opportunity to arbitrate their cases for a $300 fee before extensive fees and costs are spent. This program is generally ordered in cases where the amount in controversy is equal or less than $50,000. The Parties may agree to waive this cap and allow the possibility of a larger award. The Parties may also agree to make the Arbitration Award binding, thereby eliminating the need of further litigation. Otherwise, after Judicial Arbitration, the Parties receive an Award that they may accept or reject.

## Serving the ADR Information Packet

The ADR Information Packet, which is provided to all Plaintiffs initiating a lawsuit, consists of:

- ▶The ADR Information Guide
- ▶The ADR Stipulation Form

The Plaintiff must serve a copy of the ADR Packet on each Defendant with the Complaint. Cross-Complainants must serve a copy of the ADR Packet on all new Cross-Defendants with the Cross-Complaint. The ADR Information Packet is available in the Civil Clerk's Office or online at www.merced.courts.ca.org.

## Who You Can Call

For additional information, please contact the following:

- ▶State Bar of California (415) 538-2000
- ▶Calif. Dept. of Consumer Affairs, Consumer Info. Center, (800) 952-5210
- ▶Merced Superior Court, ADR Office, (209) 725-4249
- ▶Merced County Bar Association, (209) 722-8129
- ▶Self Help Information on line: http://www.courtinfo.ca.gov/selfhelp

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address)<br><br>TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MERCED<br>627 W. 21st Street<br>Merced, CA 95340<br>(209) 725-4111 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| STIPULATION AND ORDER REFERRING MATTER TO ALTERNATIVE DISPUTE RESOLUTION | CASE NUMBER: |
| (Check one): ☐ UNLIMITED CASE (Amount demanded exceeds $25,000) ☐ LIMITED CASE (Amount demanded is $25,000 or less) | Assigned Judge:<br><br>Case Category (please circle): I II III |

THIS ADR STIPULATION IS TO BE FILED WITH THE COURT <u>WITHIN FIFTEEN (15) CALENDAR DAYS</u> OF THE PARTIES' AGREEMENT TO PARTICIPATE IN ADR

Pursuant to Cal. Rules of Court, Rule 3.221 and having met and conferred pursuant to Rules of Court, Rule 3.724, the parties hereby stipulate to refer the case to the following Alternate Dispute Resolution Process:

- ☐ Mediation
- ☐ Binding Private Arbitration
- ☐ Non-binding Private Arbitration
- ☐ Neutral Case Evaluation
- ☐ Private Settlement Conference
- ☐ Early Mediation (fee: $300)*

The ADR process will be conducted by (name of individual):______________________________

Provider's Address: ________________________________________

Provider's Telephone: ______________ Fax: ____________ E-Mail:______________

The ADR process will be completed on, or before, (date):______________________________

The next Case Management Conference is scheduled for (date/time):________________________

* Parties not already assigned to <u>Early Mediation</u> may execute and file this Stipulation as soon as the case is at issue. Upon filing this Stipulation, an early Case Management Conference will be scheduled by the Court and the parties will have the opportunity to attempt settlement before extensive costs and fees are undertaken. The fee for Early Mediation is $300, to be shared by the Parties and paid to the Court in full with the filing of this Stipulation. The $300 fee is <u>not</u> waived for successful Fee Waiver Applicants.

The Parties further stipulate and agree that:

1. All parties have reached agreement as to the payment of fees of the ADR provider;
2. All Parties have been served and submit to the jurisdiction of the Court;
3. ~~All Parties have agreed to a specific discovery plan to make the ADR process meaningful;~~
4. Copies of this Stipulation and self-addressed stamped envelopes are provided to the Court for returning file-stamped copies to counsel and the parties along with the $20.00 fee for filing a Stipulation with Order per *Govt. Code* §70617(c) (2);
5. Early Mediation fee of $300 total is submitted with this Stipulation (if applicable); and
6. All Parties are aware that a request for continuance of the ADR completion date established by this Stipulation and Order is discouraged, and the request may be denied by the Court.

Type or print name of ☐ Party without attorney ☐ Attorney for ☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

(Date and Sign) Attorney or Party without attorney (Sign in blue ink)

Type or print name of ☐ Party without attorney ☐ Attorney for ☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

(Date and Sign) Attorney or Party without attorney (Sign in blue ink)

Type or print name of ☐ Party without attorney ☐ Attorney for ☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

(Date and Sign) Attorney or Party without attorney (Sign in blue ink)

Type or print name of ☐ Party without attorney ☐ Attorney for ☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

(Date and Sign) Attorney or Party without attorney (Sign in blue ink)

☐ Additional signatures are attached

Pursuant to the Stipulation of the parties, the above case is ordered to ADR as described and agreed to above. If applicable, an early Case Management Conference is set for ______________________.

Dated: ________________

☐ DONALD J. PROIETTI, JUDGE
☐ BRIAN L. McCABE, JUDGE
☐ JEANNE SCHECHTER, COMMISSIONER
☐ DAVID FOSTER, TEMPORARY JUDGE
☐

# EXHIBIT "B"

EDWARD GARCIA, Bar No. 173487
BRAGG & KULUVA
Embarcadero Center West
275 Battery Street, Suite 1100
San Francisco, CA 94111
(415) 273-6500
(415) 273-6535 Fax

Attorneys for Defendant
Merced Faculty Associates Medical Group, Inc.

FILED
MERCED COUNTY
14 SEP -4 PM 2:37
CLERK OF THE SUPERIOR COURT
BY RITA GARCIA
DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MERCED

File-By-Fax

INES MOTA: AN INDIVIDUAL,

Plaintiff.

vs.

MERCED FACULTY ASSOCIATES MEDICAL GROUP, INCORPORATED; A CORPORATION; AND DOES 1-100, INCLUSIVE,

Defendants.

CASE NO.: CVM019040

ANSWER TO COMPLAINT; DEMAND FOR JURY

COMES NOW Defendant Merced Faculty Associates Medical Group, Inc. and answering Plaintiff's Complaint on file herein, responds as follows:

I

Under the provisions of section 431.30(d) of the Code of Civil Procedure, Defendant Merced Faculty Associates Medical Group, Inc. denies both generally and specifically each, every, and all of the allegations contained in said Complaint, and the whole thereof, including each and every purported cause of action contained therein, and denies that the Plaintiff sustained or will sustain damages in the sum or sums alleged, or in any other sum or sums, at all.



09/05/2014 8:04 FAX 12098263336 LEGAL SERVICES 0007/0016

Further answering the Complaint, Defendant Merced Faculty Associates Medical Group, Inc. denies that the Plaintiff sustained any injury, damage or loss by reason of any act of omission or breach of warranty, either express or implied, on the part of Defendant Merced Faculty Associates Medical Group, Inc. or any agent, servant, or employee of Defendant Merced Faculty Associates Medical Group, Inc.

## AFFIRMATIVE DEFENSE

### *Failure to State a Claim*

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### *Failure to Exhaust Administrative Remedies*

As a separate and independent affirmative defense, Defendant alleges that to the extent that Plaintiff has failed to satisfy statutory prerequisites to suit or failed to exhaust her administrative remedies, those causes of action are barred.

### *Causation*

As a separate and independent affirmative defense, Defendant alleges that, to the extent Plaintiff has suffered the damages alleged in her Complaint, such damages were not caused by Defendant, but by the acts or omissions of Plaintiff herself or others.

### *Privilege*

As a separate and independent affirmative defense, Defendant alleges that the actions alleged in the Complaint were at all times reasonable, privileged and justified.

### *Laches/Waiver/Estoppel/Unclean Hands*

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's claims are barred by the equitable doctrines of laches, waiver, estoppel, and unclean hands.

***Improper Parties***

As a separate and independent affirmative defense, Defendants allege that the individuals named as Defendants were not Plaintiff's employers and therefore are not proper parties to any of Plaintiff's claims.

***Workers' Compensation Exclusivity***

As a separate and independent affirmative defense to each and every purported claim for injury to Plaintiff's health, including, without limitation, Plaintiff's claimed injuries of emotional distress, and any and all disabilities or injuries incurred in the examination, treatment, or care of such injuries, Defendant alleges that if the alleged injuries occurred (which Defendant denies), they arose out of and were sustained during the course and scope of Plaintiff's employment and were proximately caused by Plaintiff's employment. Defendant also alleges that Plaintiff's employer has secured payment of compensation for its employees in accordance with the provisions of the Workers' Compensation Act, Labor Code § 3706. Therefore, the Court is without jurisdiction, and the Workers' Compensation Appeals Board has exclusive jurisdiction over Plaintiff's claims for such injuries.

***Workers' Compensation Preemption***

As a separate and independent affirmative defense, Defendant alleges that the Complaint, and each cause of action contained therein, is barred by California Labor Code section 3600, *et seq.*, which provides the exclusive remedy for Plaintiff's alleged damages, including, without limitation, her alleged mental and emotional suffering.

***Statutes of Limitation***

As a separate and independent affirmative defense, Defendant alleges that to the extent that Plaintiff's claims are based on conduct occurring outside the applicable period of limitation, those claims are barred by the applicable statutes of limitation, including Code of Civil Procedures §§335.1, 337, 338, 339, 340 and 343.

***Managerial Privilege***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's claims against Defendant are barred by the managerial privilege to the extent that Defendant was acting as a manager or agent of Plaintiff's employer.

***Employer's Legal Rights***

As a separate and independent affirmative defense, Defendant alleges that the Complaint, and each cause of action contained therein, is barred because Defendant, in good faith, acted under a legal right and did no more than insist upon using these rights in a permissible way.

***Business Judgment Rule***

As a separate and independent affirmative defense, Defendant alleges that the Complaint, and each cause of action contained therein, is barred because Defendant acted in accordance with reasonable and sound business judgment.

***Misrepresentation***

As a separate and independent affirmative defense, Defendant alleges Plaintiff is barred from recovery in this action because any of the conduct of Defendant, which is alleged to be unlawful or a breach of any alleged contract, was taken as a direct result of misrepresentations made by Plaintiff.

***Fraud***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff is not entitled to any relief in this action because, but for Plaintiff's fraudulent conduct towards Defendant, Plaintiff would never have been put, and never would have remained, in a position to be injured by Defendant's alleged conduct (which Defendant denies).

***Jurisdiction***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's Complaint and each and every cause of action and prayer for relief are barred because they seek damages in excess of the jurisdictional limit of this Court.

***Comparative Negligence***

As a separate and independent affirmative defense, Defendant alleges that to the extent Plaintiff's claims are based upon alleged negligence, those claims are barred in whole or in part by Plaintiff's own negligent, reckless, or intentional misconduct.

***Consent***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's causes of action are barred in their entirety to the extent that she consented to the actions of which she complains.

***Employer's Actions Justified***

As a separate and independent affirmative defense, Defendant alleges that the Complaint, and each cause of action contained therein, is barred because Defendant was justified in doing, or refraining from, the acts alleged in the Complaint.

***Failure to Exhaust Contractual Dispute Resolution***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff failed to exhaust the contractual resolution procedure the parties agreed upon at the beginning of the employment relationship.

***Failure to Mitigate Damages***

As a separate and independent affirmative defense, Defendant is informed and believes, and on that ground alleges, that Plaintiff has had and continues to

have the ability and opportunity to mitigate the damages alleged in her Complaint and has failed to act reasonably to mitigate such damages.

***Fair Responsibility Act***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's recovery, if any, of non-economic damages based upon the Complaint, and each purported cause of action alleged therein, is limited to the percentage of fault, if any, attributable to Defendant as provided in the Fair Responsibility Act of 1986, Cal. Civ. Code §§ 1431-1431.5.

***Lack of Proximate Cause***

As a separate and independent affirmative defense, Defendant alleges that the Complaint, and each cause of action contained therein, is barred because the damages or injuries allegedly sustained by Plaintiff, if any, were not proximately caused by the acts, omissions, and/or breach of obligations of Defendant, thereby eliminating or reducing any alleged liability.

***No Imperative Relief***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff is not entitled to equitable relief, including injunctive relief, because monetary damages would be adequate to compensate Plaintiff, should Plaintiff establish that she has suffered any damages as a result of the acts of this answering Defendant.

***No Attorney's Fees***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff is barred from recovering attorney's fees and costs, because his complaint fails to state a cause of action and supporting facts that would enable Plaintiff to recover attorneys' fees and costs.

***No Punitive Damages***

As a separate and independent affirmative defense, Defendant alleges that the Complaint, and each cause of action contained therein, is barred because

Plaintiff has failed to state facts sufficient to support an award of punitive damages against Defendant.

***No Unjust Enrichment***

As a separate and independent affirmative defense, Defendant alleges that the Complaint, and each cause of action contained therein, is barred because any recovery by Plaintiff would constitute unjust enrichment.

***Statutes of Limitation - DFEH***

As a separate and independent affirmative defense, Defendant alleges that to the extent Plaintiff's cause of action is based upon the California Fair Employment and Housing Act, it is barred by Plaintiff's failure to timely exhaust her administrative remedies, in whole or in part, pursuant to California Government Code § 12900 *et seq.*, to the extent such claims are based upon events, incidents, acts, or omissions that occurred more the one year prior to Plaintiff's filing any charge with the Department of Fair Employment and Housing ("DFEH").

***Statues of Limitation – California Fair Employment & Housing***

As a separate and independent affirmative defense, Defendant alleges that to the extent Plaintiff's cause of action is based upon the California Fair Employment and Housing Act, it is barred, in whole or in part, by operation of the applicable statutes of limitation including California Government Code § 12900 *et seq.*, to the extent that Plaintiff waited more than one year after her receipt of her right to sue letter to commence her civil action.

***Failure to Exhaust Administrative Remedies – Fair Employment & Housing***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's cause of action is barred because she has failed to exercise and exhaust her administrative remedies, which are necessarily precedent to any civil claim under the Fair Employment and Housing Act, California Government Code §12900, *et seq.*

***Failure to Exhaust Administrative Remedies - DFEH***

As a separate and independent affirmative defense, Defendant alleges that to the extent the Complaint asserts illegal conduct not alleged in a charge filed with the California Department of Fair Employment and Housing, the allegations could not be expected to flow from any investigation conducted by the DFEH, and Plaintiff has failed to exhaust her administrative remedies as required by the Fair Employment and Housing Act, California Government Code § 12900 *et seq.*

***Not Member of a Protected Class***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff is barred from any recovery in this action because Plaintiff is not a member of the class of individuals California's Fair Employment and Housing Act is intended to protect.

***Statutory At-Will Employment***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's claim fails because his employment was terminable at the will of either Plaintiff or Defendant under California Labor Code § 2922.

***Contractual At-Will Employment***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's cause of action is barred because Defendant had a contractual right to terminate Plaintiff's employment at will.

***Failure to Use Ordinary Care and Diligence***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's causes of action are barred under California Labor Code §§ 2854 and 2856, respectively, in that Plaintiff failed to use ordinary care and diligence in the performance of his duties and failed to comply substantially with reasonable directions of his employer.

***Good Cause for Termination***

As a separate and independent affirmative defense, Defendant alleges that it had a sufficient and nondiscriminatory cause to terminate Plaintiff's employment.

***Honest But Mistaken Belief***

As a separate and independent affirmative defense, Defendant alleges that if any contract or covenant was breached by the termination of Plaintiff's employment, although such is not admitted by or alleged herein, Defendant cannot be held liable for any damages Plaintiff may have sustained because it had an honest but mistaken belief that it had cause to terminate Plaintiff's employment.

***No Employment Relationship***

As a separate and independent affirmative defense, Defendant alleges that Plaintiff's claims against Defendant for Unlawful Discrimination Based on Race, Creating a Hostile Working Environment, Retaliation Against an Employee, and Breach of the Covenant of Good Faith and Fair Dealing are barred because at no time was Plaintiff employed by Defendant.

***Activity Did Not Give Rise to Public Policy***

As a separate and independent affirmative defense, Defendant alleges that the Sixth Cause of Action is barred because there is no casual connection or nexus between Plaintiff's termination and any matter of public policy. Plaintiff's termination did not give rise to matters of public policy and no public policy violations occurred.

***Plaintiff failed to Perform Duties***

As a separate and independent affirmative defense, Defendant alleges that the Sixth Cause of Action is barred by the provisions of Labor Code Sections 2854 and 2856, and each of them, in that Plaintiff failed to use ordinary care and diligence in the performance of his/her duties and failed to comply substantially with the reasonable directions of his/her employer.

WHEREFORE, Defendant prays that Plaintiff take nothing, and that this answering Defendant be dismissed hence with costs of suit incurred herein, and for such other further relief as the Court deems fit and proper.

DATED: September 3, 2014

BRAGG & KULUVA

By: ______________________

EDWARD GARCIA
Attorneys for Defendant
Merced Faculty Associates Medical Group, Inc.

**DEMAND FOR JURY TRIAL**

Defendant Merced Faculty Associates Medical Group, Inc. hereby demands a trial by jury.

DATED: September 3, 2014

BRAGG & KULUVA

By: ______________________
EDWARD GARCIA
Attorneys for Defendant
Merced Faculty Associates Medical Group, Inc.

**PROOF OF SERVICE BY MAIL**
**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
C.C.P. Sections 1013 and 1013a

I, the undersigned, hereby certify that I am a citizen of the United States and over the age of eighteen; I work in the County of San Francisco, California, in which County the within mailing took place; and I am not a party to the subject case. My business address is Embarcadero Center West, 275 Battery Street, Suite 1100, San Francisco, CA 94111.

I am familiar with the practice of this law firm for the collection and processing of documents for mailing with the United States Postal Service, that the documents would be deposited with the United States Postal Service that same day in the ordinary course of business.

On September 4, 2014, I placed the within **ANSWER TO COMPLAINT; DEMAND FOR JURY** in an envelope(s) sealed, with postage thereon fully prepaid, and following the ordinary business practices of this law firm, placed said envelope(s) for collection and mailing to the parties to the within action, at San Francisco, California, addressed as follows:

Robert J. Wasserman
Mayall Hurley P.C.
2453 Grand Canal Boulevard
Stockton, CA 95207

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed this day September 4, 2014, at San Francisco, California.

Annette Biltz